## Michael Trieber *vs.* George M. Blocher.

Where the plaintiff's goods are seized under an attachment against another, he may sue the sheriff in trespass and recover for the illegal *taking and detention*, notwithstanding he came into court in the attachment case, filed his plea claiming the property, and recovered judgment for its restitution.

Under our attachment system the owner of the goods attached, if he has knowledge of the attachment, and the taking of his property, whether regularly summoned or not, is *compelled* to come in and claim the property in order to prevent a judgment of condemnation, and if he fails to do so he has no remedy against the sheriff for *selling* it under a *fi. fa.* upon the judgment of condemnation.

Appeal from the Circuit Court for Allegany county.

*Trespass vi et armis,* by the appellant against the appellee, then sheriff of Allegany county, for taking and carrying away

certain goods and chattels belonging to the plaintiff. The pleas were, 1st, *non cul*, upon which issue was joined, and six others, which are sufficiently stated in the opinion of this court, and to which the plaintiff demurred. The court, (PERRY, J.,) overruled this demurrer and gave judgment for the defendant, from which the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and MASON, J.

*Thomas J. McKaig* for the appellant, stated that the special pleas in bar set out, that certain attachments were issued out of the circuit court for Allegany county, against the goods and chattels of one John M. Flurchutz, and directed to the appellant as sheriff, who, in virtue thereof, seized the goods in question and took them into possession, and made return thereof to the court; that the appellant and George Flurchutz appeared on the return of the writs, had cases docketed as claimants of the goods, and that judgments were rendered in Trieber's favor in some, and in favor of Trieber and George Flurchutz in others of these cases; that these judgments still remain unreversed, and therefore the plaintiff is not entitled to recover, and then argued:

1st. That under the decision in *Ranahan vs. O'Neale*, 6 G. & J., 298, Trieber, being notified, was bound to come in and make his claim to the property. When the court and jury decided that the property belonged to Trieber it could have been returned to him, if not sold under the act of 1839, ch. 39. This, however, would not have excused the *original taking;* it would only have stopped a claim for damages for any after proceeding. If Trieber had come in as claimant and the property had been condemned and sold on *fi. fa.*, he could not, according to *Ranahan vs. O'Neale*, recover damages for "*selling under the fi. fa.,*" yet he could recover for the *original taking and carrying away.* The law of attachment has been materially changed since the case of *Ranahan vs. O'Neale*, by the act of 1839, and where the goods are sold before the return day the law of that case has no application.

2nd. That the special pleas were no bar to the action; because the judgment of the court and the finding of the jury settled only the right of property between the attaching creditors and Trieber. If it showed anything as far as Blocher was concerned, who was not a party to the case, it showed that he had committed a trespass by taking and carrying away Trieber's property.

3rd. That if the appellant had replied to the special pleas the facts of the case, viz., that the property had been sold at great sacrifice under the act of 1839, before the return day of the writ, it would have been bad on demurrer, because a plea in bar by way of estoppel to be good, must exclude every conclusion in favor of the plaintiff's right to recover.

4th. That the pleas do not cover the whole trespass laid in the declaration for "taking and carrying away the property of the plaintiff," and are therefore bad on demurrer. *7 H. & J.,* 372, *Neale vs. Clautice.* It is no answer to the trespass to say, I took the goods under attachments against Flurchutz and so returned them to the court, and that the court, on the faith of that return, ordered me to sell the goods, but in a case where I was not a party the court decided that they were your goods, therefore you cannot sue me, no matter what wrong or injury you may have sustained by my act.

5th. That the goods attached being at the time in the possession of Trieber, the sheriff had no right to divest him of the possession; he ought simply to have summoned Trieber as garnishee, and taking the goods out of his possession was itself a trespass. *4 Gill,* 271, *Van Brunt vs. Pike & Ward.* If he had taken this course the goods could not have been sacrificed under the act of 1839.

6th. Abuse of authority given by law makes the officer a trespasser *ab initio,* and even an inquisition on a claim in goods taken on execution is not a justification to the officer, but goes only in mitigation of damages. *10 Johns.,* 98, *Townshend vs. Phillips.* 19 *Law Lib.,* 49, *Six Carpenters' Case.* 1 *Smith's Lead. Cases,* 162, and authorities there cited.

7th. It is submitted, that the case of *Ranahan vs. O'Neale*

has no bearing on this case. That case was tried before the passage of the act of 1839. Again, that was a case stated, and the point was, "was the plaintiff entitled to recover to the *extent of the case stated?*" that is, damages for *selling* the property under a *fi. fa.*, when he could have appeared as claimant and prevented the condemnation. The court decided the sheriff was not liable for *selling* the property *under the fi. fa.*, and that Ranahan was not therefore entitled to recover "to the extent of the case stated," to wit, for taking and *selling* the property. If the case stated had been for *taking and carrying away*, a very different question would have been presented.

*Thomas Devecmon* and *George A. Pearre* for the appellee, argued:

1st. That the plaintiff cannot maintain his action of trespass against the sheriff for taking the goods under the writ of attachment, after having *elected* to follow the goods *in specie*, as claimant, and establish his right to them as owner. By the Maryland practice, this mode of coming in and claiming goods, attached as those of a third person, is now fully established as a proceeding in which the title may be tried. *Evan's Pr.*, 100, 238, 239. In all cases of proceedings *in rem* every one who can be affected by the decision has a right to appear and assert his rights. 1 *Greenlf. on Ev.*, sec. 525.

2nd. The mode of proceeding by claim is analogous to replevin from a purchaser after sale made. This remedy the owner of the property attached may pursue if he stays out of court and does not come in to try his title by claim. If the appellant had resorted to replevin it would have been a bar to the action for trespass. 1 *Comyn's Digest*, 229, *title, "Action," letter K.* 3 *How.*, 99, 100, *Kendall vs. Stokes.* 4 *Rawle*, 285, *Marsh vs. Pier.*

3rd. It makes no difference that in trespass the plaintiff could recover more, viz., the value of the property, as well as damages for the taking and detention, than he would by following the goods, in which he can only recover the goods themselves. Judgment for plaintiff in *assumpsit* for money,

3    v.10

the proceeds of the property will be a bar to trover for the same property, (1 *Comyn's Digest*, 229,) and yet in such case, by an action of trover, the plaintiff might recover much more than the goods sold for, as they might have been sold much under value. So trover bars trespass, and yet you may recover more in one action than in the other. 3 *How.*, 99, 100. This is upon the ground of *election.* When a plaintiff makes his election to pursue a particular remedy, he knows the extent of the recovery in that form, and if it is not co-extensive with the injury, he should adopt the one that is, *ut sit finis litium.* Trover also bars *assumpsit* for the price of the same goods, though the first of these actions goes for the value of the goods and the second only for the proceeds. They respectively bar each other, though they might lead to very different results. 2 *Sir Wm. Bl. Rep.*, 827, *Hitchin vs. Campbell.* So where a plaintiff may sue in general *assumpsit* for money had and received, or in a special action on an agreement, in which latter suit he could recover more than in the former, yet, by adopting the former, he is barred from the latter. 2 *Burr*, 1010, *Moses vs. Macferlan.* See also on this point 2 *Saund. on Pl. & Ev.*, 445, 459. 6 *Randolph*, 457, *Hite vs. Long.* 2 *Nott & McCord*, 205, *Bates vs. Quattlebom.* 7 *H. & J.*, 73, *James vs. Lawrence.*

4th. The goods are in court and under its control so far as shown by this record. The court has ordered a restitution of them to the plaintiff. If permitted to proceed in the action of trespass, he recovers the value of the goods which he has already recovered at law *in specie.* In the claimant case the right of property in the plaintiff is established; the sheriff cannot dispute it. The judgment in the claimant case being a proceeding *in rem*, binds all persons, whether technically parties or not. 1 *Greenlf. on Ev.*, 525. 6 *G. & J.*, 298, *Ranahan vs. O'Neale.*

5th. The case of *Ranahan vs. O'Neale* does not decide, that where a party is notified he is *bound* to come in and claim the property. It only decides that the owner of goods attached and subsequently condemned, can in an action against the sheriff recover damages for the seizure, but not for seizure *and*

*sale*. He may elect to stay out or come in. If he stays out he can recover for the seizure in trespass the *whole* value of the goods and damages besides. There is no necessity for two suits to get his full rights. The law does not force him to get his property and then give him another action for the taking of it. The act of 1839 has nothing to do with the case; because, as far as this record shows, the goods were not sold but in court; besides, even if it were otherwise, the money stands in the place of the goods; the proceeds of sale are deposited in court to the credit of the suit.

6th. The plea of former recovery to be good need not be between the same parties; if the plaintiff is the same it bars him. 1 *Rawle*, 121, *Floyd vs. Browne*. 1 *Comyn's Digest*, 230. *Croke Eliz.*, 668, *Ferrer vs. Arden*, and the same case in 6 *Coke*, 7. 1 *Hen. & Munf.*, 450, *Murrell vs. Johnson*. *Yelverton*, 67, *Broome vs. Wooton* A recovery against one *tort-feasor* is a bar to an action against the other. 1 *Chitty's Pl.*, 89. It goes upon the doctrine of election; having chosen one remedy for the wrong done and pursued it to judgment he shall not have another. But was not the sheriff in truth a party or privy in the claimant case? The attaching creditor and the claimant are nominally parties to the record. The claimant claims in the suit the property and prays its return to him. The attaching creditor has no control over it. It is in the sheriff's hands as the officer of the court. The claimant can get no judgment binding the attaching creditor for its return. Let the result of the claimant case be what it may, no judgment can be rendered against the attaching creditor except for costs. Nor can the judgment of the court in favor of the claimant give a *foundation* for a claim against the attaching creditor for a restitution of the goods. He must look to the court for their return. He cannot look to the sheriff. He has no power to return them after he has made his return, unless by order of the court. In the claimant case, therefore, the judgment is to be executed by the sheriff, viz., to restore the goods. The judgment is one of *restoration* by the sheriff. The sheriff is virtually a party, and the only party responsible for not executing the judgment.

7th. Whether the plea covers the entire trespass stated in the declaration depends upon the question, whether the judgment in the claimant case is a bar to the trespass? If it is then *in law* it covers the whole trespass laid in the declaration. The authorities which have been cited show it is.

ECCLESTON, J., delivered the opinion of this court.

The principle chiefly relied upon by the appellee's counsel for an affirmance of the decision below is, that when a party having a choice between two or more remedies for an injury, thinks proper, voluntarily, to select one, which does not afford him as full redress as another might have given, he cannot, after a recovery in that which has been selected, resort to a different form of action, although his object may be to recover only such sum as, when added to the amount obtained in the first suit, would be equivalent to what he might have recovered in the second form of action, had that been resorted to in the first instance. But even if it should be conceded that the principle here relied upon is true, as a general rule, still it could be of no advantage to the appellee, because, in our opinion, the present case does not come within the rule.

The 2nd, 3rd, 4th, 5th, 6th and 7th pleas were demurred to, and the demurrer overruled; and judgment having been rendered in favor of the defendant, the plaintiff appealed. We therefore are called upon to decide whether the pleas are sufficient to bar the action.

The second plea states, that a writ of attachment was issued out of the circuit court for Allegany county against the goods and chattels, &c., of John M. Flurchutz, which writ was delivered to the defendant, as sheriff, to be executed; that he, as sheriff, seized the goods and chattels in the declaration mentioned, and that such seizure and taking is the supposed trespass of which the plaintiff complains. That as sheriff he made return of the writ, with schedule of the goods attached, and that the said case of attachment was so proceeded in that the plaintiff came into court, as claimant of the goods and chattels, and, by leave of the court, caused a case to be docketed as between himself, as claimant, and the plaintiff in the

attachment; and that in said case so docketed the said Trieber filed his plea, claiming the goods and chattels as his, and not the goods and chattels of said John M. Flurchutz. And that at the April term 1853, a judgment was rendered by the circuit court for Allegany county in the said claimant case, in favor of said Trieber, as claimant of said goods, and for his costs and charges.

The *third* plea is similar to the *second,* except it states that Trieber and George Flurchutz came into court as claimants of the goods, and the judgment in that claimant case was rendered in their favor for the goods, and for their costs.

The *fourth* plea is also very similar to the second, except that it states the attachment to have been issued at the suit of James P. Wright; and that in the claimant case, docketed by Michael Trieber and George Flurchutz, claiming the goods, a jury was empannelled to try the issue, and a verdict was rendered in favor of the claimants, as owners of the goods; and that the court rendered judgment on the verdict in the said claimant case, that the goods and chattels in the schedule of the sheriff mentioned, as claimed by said claimants, be restored to them, and also for their costs.

The *fifth* plea is very similar to the second, but stating the attachment to have been issued by Richard D. Johnson, the claimant case docketed by M. Trieber and G. Flurchutz, and upon plea of the claimants, claiming the property, and replication thereto filed, the court rendered judgment that the goods be restored to them, and also gave judgment for their costs.

The *sixth* plea is like the fourth, stating, however, the attachment to have been issued at the suit of McDougall and. Clarke, the verdict and judgment being the same as stated in the fourth plea.

The *seventh* plea is like the sixth, except stating Frederick Winke as the attaching creditor.

Under our peculiar system in regard to attachments, especially since the decision of *Ranahan vs. O'Neale,* 6 *G. & J.,* 298, we do not think that a party going into court and claiming the property, by a plea of claim, can be considered as standing

in a position analogous to that of a man making a voluntary choice between several remedies to redress an injury. The case alluded to places the claimant in a predicament which compels him to go in, if he has knowledge of the attachment and the taking of his property, whether regularly summoned or not; for if he stands out and makes no resistance to the attachment, a judgment of condemnation will necessarily follow in almost every such case, if not in all. And if a *fi. fa.* issues upon the judgment, under which writ a sale is made, the party from whom the property was originally taken cannot recover damages against the sheriff for making the sale, because he is protected by the authority of a judgment rendered by a court of competent jurisdiction.

Ranahan, it seems, although he may not have been legally warned by the sheriff, had knowledge of the attachment of his property, but did not appear or assert his claim before the court. A judgment of condemnation was entered, upon which a *fi. fa.* issued and a sale under it was made by the sheriff. An action of trespass was instituted against O'Neale, the sheriff, by Ranahan, to recover damages for taking and selling the goods. A verdict for damages was rendered in favor of the plaintiff, which verdict, it was agreed, should be subject to the opinion of the court upon a case stated. The court below gave judgment for the defendant, which was affirmed on appeal.

It is evident, from the opinion of the appellate court, as delivered by Judge Stephen, that they did not consider themselves as called on to decide whether the plaintiff could recover in that suit, simply for the taking and detaining his goods, but whether he was entitled to a judgment upon his verdict which included damages for taking and *selling*. They begin by stating the principle, that in trespass a plaintiff is not bound to prove the *whole* of his claim as laid in his pleadings, but may recover *less* than he claims, if his proof fails to establish the whole. Then it is said: "But in this case we are informed by the statement of facts, that the suit was brought for taking and selling the property in question, and damages have been assessed by the jury co-extensive with the plaintiff's claim; and

the question submitted to the court was, whether the plaintiff was entitled, upon the facts agreed, to retain the verdict and to have a judgment entered upon it? The question, therefore, presented to the court seems to have been, whether the plaintiff was entitled to recover generally, or, in other words, whether he was entitled to recover to the whole extent of his demand?" They, likewise, immediately after say:

"We do not think that his right to recover can be sustained to that extent, as it would involve the responsibility of the sheriff for an act, as a *tort*, which as an officer of the law he was bound to perform. In selling the property under the *fieri facias*, he cannot be considered as a trespasser or wrong doer, and responsible in damages to the party claiming title to the property. He acted only in obedience to the mandate of the law, and it would be strange if the law, whose mandate he obeyed, should hold him responsible in damages for such obedience." As a further reason why the legality of the sale should not be called in question, the court held there was no necessity for allowing Ranahan to do that, in order to vindicate his rights of property, if wrongfully seized or illegally taken; because having had notice that his property was attached he had a right, on the return of the writ, to have appeared in court and there claimed his property, by moving to have the attachment quashed. The knowledge on the part of Ranahan that his property had been attached, although he might not have been legally warned by the sheriff, the court considered as having enabled Ranahan to have appeared if he had seen fit, and moved the court to release the property from the effect of the attachment. And then it is said: "This he did not do, in consequence of which it was condemned, and rendered liable to execution and sale, for the purpose of satisfying the plaintiff's claim."

There is not a word which looks as if the court were considering the case as presenting any question in regard to the plaintiff's right to recover damages for taking the goods under the attachment, but the whole argument is clearly intended to establish the position, that the sheriff could not be responsible to the plaintiff, in damages, for selling the property under the *fieri facias* upon the judgm⸱⸱⸱ ⸱f ⸱⸱⸱d⸱⸱⸱⸱⸱⸱⸱⸱

After saying the question for the court's decision "seems to have been, whether the plaintiff was entitled to recover generally, or, in other words, whether he was entitled to recover to the whole extent of his demand?" it is said, "we do not think that his right to recover can be sustained to that extent." And thus considering the agreed statement of facts as having presented the question, whether the plaintiff could recover to the whole extent of his claim, which included damages for taking, as well as for selling, the property, we understand the Court of Appeals as having affirmed the judgment in favor of the defendant, solely because the plaintiff could not recover for the selling. That the court took this view of the subject is confirmed by the concluding sentence of Judge Stephen's opinion, in which he says: "The authorities above cited clearly show, that the sheriff in the case before this court was justified in making the sale, and of course was not responsible in damages for that act."

The court took especial care to show that the agreed statement before them raised a question, whether the plaintiff could claim a judgment upon the verdict, including damages for *taking* and *selling*, and then, confining themselves exclusively to an argument showing the sheriff was not answerable for selling, it would be a very unreasonable inference to suppose the court designed to intimate an opinion adverse to the right of the plaintiff to recover for taking the goods, if that had been the sole question before them. If we are authorised to make any inference on that point the contrary one would seem to be more reasonable, from a view of the whole case. If the court had thought the sheriff not responsible for either taking or selling, there would have been no necessity for stating the principle that a party might recover less than he claims, and then saying: "But in this case we are informed by the statement of facts, that the suit was brought for taking and selling the property in question, and damages have been assessed by the jury co-extensive with the plaintiff's claim." And if the plaintiff could recover for neither, why should the court have made such a statement, then announce their understanding of the question presented for consideration to be, whether the

Trieber *vs.* Blocher.

plaintiff could recover to the whole extent of his claim, and decide that he could not: having confined themselves, exclusively, to an argument for the purpose of showing that for *selling* the sheriff was not answerable in damages?

The present pleas are designed to be in bar of the plaintiff's right of action, and, in our opinion, the facts set forth in them are not sufficient to defeat the claim of the plaintiff, based upon the taking of his goods by the sheriff under the attachment. Admitting the facts stated in the pleas to be true, as the demurrer does, still the plaintiff has a right to recover for the taking and detention of his goods, if no further, and consequently the judgment on demurrer in favor of the defendant is erroneous.

The pleas state that Trieber came into court in the attachment case and claimed the property, for which judgment was rendered in his favor. He therefore had knowledge of the attachment, and, in order to prevent a judgment of condemnation, he was compelled to go in and claim his goods. Had he stood aloof and such a judgment had been rendered—as in ninety-nine cases out of a hundred it is reasonable to suppose would be the result—and then the property had been sold under a *fi. fa.*, in a suit afterwards instituted by him to obtain redress for the loss, he would be told that under the authority of *Ranahan vs. O'Neale*, you knowing of the attachment might have prevented the condemnation of the goods, if you had seen fit to go in and claim them; but, in consequence of failing to do so, a court of competent jurisdiction has rendered a judgment, under which a sale has been made by the sheriff, as an officer of the law bound to obey its mandates, and therefore he is not answerable to you in damages for the value of the property for selling the same. The judgment of the court is a protection to the sheriff from such responsibility, when with notice of the attachment the owner of the goods makes no effort to prevent the judgment. Surely this is a correct view of the law as established by the case referred to. And if so it imposes upon the owner of property taken under an attachment, if he has notice of it, such a controlling necessity for him to appear in court and claim it, as that if he does so, and

4     v. 10

obtains a judgment in his favor for the property, it would be great injustice to consider him as standing in a similar position to a party who has voluntarily made his election between two remedies for an injury sustained by him.

The view insisted upon by the appellant would place the owner of the attached property in the predicament of having no right to recover damages for its value, if condemned and sold, where he has not gone in and claimed it, because, having failed to exercise the right of so making his claim, he has no redress against the sheriff for selling under the judgment. And if the owner appears for the purpose of making claim and actually recovers the goods, he not only can· recover nothing for their value because he has got them, but by so making claim. he has lost his right of action for the illegal taking, in consequence of having made his election to appear and claim the property, instead of standing aloof from the attachment cause and suing the sheriff.

We cannot yield our assent to such a doctrine. But should it be conceded that the facts set forth in the pleas are sufficient to prevent the plaintiff from recovering the value of the property, as such, they do not bar his right of action for taking and detaining it, and consequently the judgment for the defendant must be reversed.

*Judgment reversed and procedendo awarded.*

MASON, J., delivered the following separate concurring opinion:

Where a party can only recover back specific property wrongfully taken from him, without damages for the wrongful taking and detention, as in a case like the present, where property was seized under an attachment, an election to come in as a claimant of the property in such a proceeding, will not preclude him from afterwards suing the wrong-doer for dam· ages. for the seizure and detention: and it matters not that in such latter proceeding the party might recover damages, not only for the wrongful taking, but also for the value of the property itself. The reason is, that a party placing a fictitious or special value upon the property seized, as in the case of a

negro, family plate or pictures, and the like, ought not to be precluded, by a desire to recover back the specific property, from recovering damages in a separate action for its illegal taking, or, *vice versa*, as in neither of such proceedings could the party recover both the specific property as well as damages. In fact · neither remedy secures complete relief, and therefore both might be resorted to.

I concur with the court, that the judgment ought to be reversed for the reasons above expressed.